**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-CR-20123-BLOOM/OTAZO-REYES**

**UNITED STATES OF AMERICA**

**vs.**

**EMRAAN ALI,**
**a/k/a "Abu Jihad TNT,"**

**Defendant.**

_____/

## MOTION FOR *JAMES* HEARING TO ADMIT COCONSPIRATOR STATEMENTS

The Superseding Indictment charges Defendant Emraan Ali with two counts related to his provision of currency, monetary instruments, financial services and personnel to the Islamic State of Iraq and Syria ("ISIS").  [ECF No. 47, Counts 1 & 2].  That personnel included the both the Defendant's own contributions as an ISIS fighter and also his provision of his two sons, Jihad and Islam, who he took from their home in Trinidad, to support ISIS in Syria.  The evidence shows that Defendant, his two sons, and their mother, among others, were all part of a conspiracy to provide material support to ISIS.  The Government seeks to admit WhatsApp voice notes, text messages and pictures (the "WhatsApp Communications") amongst these co-conspirators at trial. The government will therefore show to a standard of a preponderance of the evidence that the WhatsApp Communications were made by Defendant's co-conspirators, during the course of the conspiracy and in furtherance of the conspiracy as required under Federal Rule of Evidence 801(d)(2)(E).

While the Defendant's sons, Jihad and Islam Ali were actively fighting the "kafir," or non-believers, as they themselves described them, both sons were simultaneously communicating with their mother, Lazina Mohammed, who remained in Trinidad.  The WhatsApp Communications

were captured and saved on Ms. Mohammed's cell phones.[1]  As further described herein, these communications were made in furtherance of charges contained in the Superseding Indictment and were within the scope of the conspiratorial agreement with their father, Defendant Emraan Ali. *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993) (internal citations omitted); *see also In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 139 (2d Cir. 2008).  Many of Jihad and Islam's statements to their mother furthered the ISIS conspiracy by prompting Ms. Mohammed to send money to them in Syria, and updating her on ISIS's progress in battles.

And, even if some of the statements are hearsay, multiple hearsay exceptions apply.  For example, many of the statements are present sense impressions admissible under Rule 803(1). Others are excited utterances admissible under Rule 803(3) or demonstrations of Jihad or Islam's then-existing mental, emotional, or physical condition admissible under Rule 803(3). Additionally, many of the statements expose Jihad and Islam to criminal liability and are admissible under Rule 804(b)(3).

Finally, even if the Court finds that a statement is hearsay and that none of the enumerated hearsay exceptions apply, all the statements are admissible under Rule 807's residual exception. In other words, the WhatsApp Communications contain sufficient guarantees of trustworthiness and are more probative on the point than any other available evidence.

The United States therefore moves this Court to find that the WhatsApp Communications, as discussed more fully below, are admissible at trial.  To do so, the United States requests that the Court hold a pretrial hearing under *United States v. James*, 590 F.2d 575 (5th Cir. 1979), to determine the WhatsApp Communications' admissibility. *See United States v. Espino-Perez*, 798

---

[1] On June 17, 2019, and January 21, 2020, U.S. law enforcement interviewed Ms. Mohammed in Trinidad, and on both occasions, Ms. Mohammed gave law enforcement consent to search her phones.

F.2d 439, 441 (11th Cir. 1986) (finding that a pretrial *James* hearing is the preferred practice for determining admissibility of coconspirator statements in the Eleventh Circuit).

I.   THE WHATSAPP COMMUNICATIONS

The Government seeks to admit thirty-three (33) WhatsApp voice messages between Jihad, Islam, and their mother Lazina Mohammed.  These were selected from over 1,000 voice messages that were recovered, and they were selected due to their significance and probative value.  Below is a transcript of each proposed voice message together with the evidentiary rules that would provide admissibility.

**June 19, 2018: Jihad Statements**

| # | File Name | Date and Time | Transcript | Applicable Exceptions |
|---|---|---|---|---|
| 1. | PTT-20180619-WA0028.opus | 6/19/2018 4:39 pm | Jihad: "Mommy, I ain't….we are not staying with no brother, we are living by we self, we have . . . I in charge of a little group and we have our own house and you know we just do we thing." | 804(d)(2)(E) 803(1) 807 |
| 2. | PTT-20180619-WA0029.opus | 6/19/2018 4:41 pm | Jihad: "Yeah we in a katibah but, but we have we own thing" | 804(d)(2)(E) 803(1) 804(b)(3) 807 |

**July 13, 2018: Jihad Statements**

| # | File Name | Date and Time | Transcript | Applicable Exceptions |
|---|---|---|---|---|
| 3. | PTT-20180713-WA0026.opus | 7/13/2018 3:28 pm | Jihad: "No, no, no, that train [UI] a little bit because dawla wasn't really fighting and thing so they sent all their soldiers just to train so right now nothing is going on no more no more training and thing." | 801(d)(2)(E) 803(1) 804(b)(3) 807 |

3

| 4. | PTT-20180713-WA0029.opus | 7/13/2018 3:32 pm | Jihad: "Right now its real problems, its uh, right now Dawla don't have no money, right now we ain't even getting food, even if you have money right now you can't buy nothing, cause they have nothing in all the stores, right now we really going through a dred, nothing you know, but I think its going to get worse because we can't organize to come into the last place we have ready and its kind of bomb out the other, the other places real dred bomb out and make far and real doing it different." | **801(d)(2)(E)** **803(1)** **807** |
|---|---|---|---|---|
| 5. | PTT-20180713-WA0036.opus | 7/13/2018 3:39 pm | Jihad: "Just the other day we went we we tried to do an attack into into over the river [UI] Shaam side nuh, but we went I went out with Islam, this is Islam first imtihan ("test") I went with him. Watch now, it was real crazy, we had to, way, real mad, if you see what go on. It was real dred, Islam started to cry all kinda thing, when the plane come, you know? And afterward we have to swim across the river, Alhamdulillah, we get through, we get through you know, it was good first experience, you know? | **801(d)(2)(E)** **804(b)(3)** **807** |
| 6. | PTT-20180713-WA0037.opus | 7/13/2018 3:39 pm | Jihad: "[UI] it was a little while ago, I think the 17th of Ramadan or 18th or something like that, it was, it was in Ramadan, it was the 20th, I forget what date it was, but it was in Ramadan." | **801(d)(2)(E)** **803(1)** **807** |
| 7. | PTT-20180713-WA0038.opus | 7/13/2018 3:40 pm | Jihad: "Yeah yeah, he normal, that was real long mommy, he normal, after 30 minutes when he get out of there he feeling real good." | **801(d)(2)(E)** **803(1)** **807** |
| 8. | PTT-20180713-WA0039.opus | 7/13/2018 3:40 pm | Jihad: "yeah real people get hurt, injured, shaheed inshallah, real people get killed, real people, even when we was going we was going across the boat get bombed, all kinds of thing, real mad, and then we trying to come back, all the boats getting bombed, we had to swim across with a tube, tire, all kinds of thing. Fast we had to run out of there." | **801(d)(2)(E)** **803(3)** **804(b)(3)** **807** |
| 9. | PTT-20180713-WA0040.opus | 7/13/2018 3:42 pm | Jihad: "No, no, no, we normal, we good" | **801(d)(2)(E)** **803(3)** **804(b)(3)** **807** |
| 10. | PTT-20180713-WA0041.opus | 7/13/2018 3:42 pm | Jihad: "Just the man, the brother who I was staying with in Mayadin, remember when we was renting, we was staying in the house together, he get a little injured in the foot, but it's a small thing." | **801(d)(2)(E)** **803(1)** **803(3)** **807** |

4

| # | File Name | Date and Time | Transcript | Applicable Exceptions |
|---|-----------|---------------|------------|----------------------|
| 11. | PTT-20180713-WA0042.opus | 7/13/2018 3:42 pm | Jihad: "other brothers, everybody else, you wouldn't know them, who get killed, and all kinda thing, it's a real real plenty different khattibas, so plenty of people, you know?" | 801(d)(2)(E) 803(1) 803(3) 804(b)(3) 807 |
| 12. | PTT-20180713-WA0043.opus | 7/13/2018 3:43 pm | Jihad: "yeah, brother Aleem, mommy you forget, all Trinidadians don't fight, so them don't get killed mommy, only people who going and fighting get killed, Aleem and all of them make car bombs and all kinds of things, only the only fighters is Zayid, me, Islam, right now it has no set of fighters, no Trinidadian fighters, except Zayid, we with Zayid even in when we was in the, when we get surrounded in that next village for like three months or something, back when we didn't talk to you, we was in a city surrounded called Gharanij, and afterwards when we come out, at the end it wasn't this on the other side, a big city, maybe like 3,000 people get surrounded with we and um, we was fighting, we was with Zayid, then we come out, and all of we join a katibah, you know?  It was a host of English men you know?" | 801(d)(2)(E) 804(b)(3) 807 |
| 13. | PTT-20180713-WA0044.opus | 7/13/2018 3:46 pm | Jihad: "Yeah mommy, everything normal, but this, we have to make dua and see whats the end goal, I hope its jannah, inshallah." | 801(d)(2)(E) 803(1) 803(3) 807 |

### September 21, 2018: Jihad Statement

| # | File Name | Date and Time | Transcript | Applicable Exceptions |
|---|-----------|---------------|------------|----------------------|
| 14. | PTT-20180921-WA0019.opus | 9/21/2018 19:07 | Jihad: "Already did the attack now, they attack we where we was living close to the frontlines now, and everything was going crazy and kuffar attacking and then we mix up, I wasn't even studying what date before I would have been normal when kuffar attack before but now we have Neema and we have to move she out and then now its more different nuh, so that why I hadn't study what date and time, even last night we was moving she out, whole night we was taking stuff and moving nuh, that why I went to sleep late and I end up getting up about real late today." | 801(d)(2)(E) 803(1) 803(2) 803(3) **(mental feeling)** 804(b)(3) 807 |

**September 23, 2018: Jihad Conversation Regarding Martyrdom**

| # | File Name | Date and Time | Transcript | Applicable Exceptions |
|---|-----------|---------------|------------|-----------------------|
| 15. | PTT-20180923-WA0010.opus | 9/23/2018 2:18 pm | Unknown: "Honestly speaking, ever since you know, all is love and all of you keep pleasant, its nice to hear all of your voice and thing, in these times and, honestly speaking, you know, we just had to be patient and I know some things are stiff out there but got to be patient and know that for a fact that you are in a better place than we are and in the life that Allah choose, and you know, we hope that he choose to make martyrs for him amongst all of us but know that you know, as I say nothing was left behind here of any significance, so honestly you know a reminder of the importance of all you men to the Umma because the fact is that if there was nobody doing this thing and establishing Islam and defending Islam as it truly is against the kuffar then it would be something compulsory upon all of us but once it has a group doing it, so no doubt, know the importance of all of you out there and the fact that all of you bringing a benefit to us and removing a harm from befalling us, no matter how many people might think and say that all of you actually bringing harm upon the Umma and know that I know different and always will love all of you, I am missing all of you, being the life that Allah created that we could meet in this world again, hope that we can meet in green birds under the arch of Allah." | **801(d)(2)(E)** **807** |
| 16. | PTT-20180923-WA0011.opus | 9/23/2018 2:40 pm | Jihad: "Yeah boy yeah boy [UI] right now well, you know it does go, right now we are in a little box, you know? Inshallah, right now they coming, right now they coming to one zone where we was real we was functioning now boy, so right now we getting ready to jazz up and look to hit again, inshallah sheen shallah, make dua for we inshallah." | **801(d)(2)(E)** **803(1)** **803(2)** **803(3)** **804(b)(3)** **807** |

| # | File Name | Date and Time | Transcript | Applicable Exceptions |
|---|---|---|---|---|
| 17. | PTT-20180923-WA0012.opus | 9/23/2018 2:40 pm | Unknown: "[UI] again you know as they say the best we can do is give advice at this point in time, inshallah, martyrdom or victory boy, the two best outcomes ever possible so nothing is a loss for y'all, where I, where we here we still have a lot of losses we could incur but nothing is a loss for y'all.  Allah is going to make it easy and grant y'all the victory because at the end of the day we know the reality of Islam as it really should be, without doubt, lies in the hands of the Caliph and those who are there striving in the frontlines. No matter how much support all over the world if it is that is not being done, it's until it is be in come pass, everything will really be doing what we should do. So, I'll send my number for you inshallah [UI] after the victory that Allah gives y'all and know when y'all go out you could always, you know, liaise and talk as we used to, I'm glad to hear from y'all, hamdulillah." | 801(d)(2)(E) 807 |

**December 20, 2018: Jihad and Ms. Mohammed Discuss Islam's Whereabouts and Katibah Membership**

| # | File Name | Date and Time | Transcript | Applicable Exceptions |
|---|---|---|---|---|
| 18. | PTT-20181220-WA0000.opus | 12/20/2018 4:46 am | Jihad: "As-alaykum mommy, this Jihad, whats the scene? Whats going on?" | 801(d)(2)(E) 803(1) 807 |
| 19. | PTT-20181220-WA0009.opus | 12/20/2018 11:13 | Jihad: "What is going on with you, with everybody, what is going on with Islam, to be honest Amir we think he say he want to kick Islam out of the katibah, they find some porn on the phone and all kind of thing, I don't know what is going on, I ain't see him, I'm looking for him to find him back, but I can't find him at all" | 801(d)(2)(E) 803(1) 803(2) 803(3) 807 |
| 20. | PTT-20181220-WA0011.opus | 12/20/2018 11:14 | Ms. Mohammed: "Yeah, you better find him and talk to him and get that straighten out because if he gets kicked out from there where he going?  What is going to happen to him?" | 801(d)(2)(E) 803(1) 803(2) 803(3) 807 |
| 21. | PTT-20181220-WA0012.opus | 12/20/2018 11:15 | Jihad: "No, no, no, dulah will send him to the next katibah but then he won't be with me, that is the problem, I'm trying to talk, I tell the Amir everything, you know I want to see whats the scene, I don't know, I'm going to talk to them inshallah, but I have to find him, I want the number." | 801(d)(2)(E) 803(1) 803(2) 803(3) 807 |

**December 20, 2018: Jihad and Ms. Mohammed Discuss Sending Money In Support of ISIS**

| # | File Name | Date and Time | Transcript | Applicable Exceptions |
|---|---|---|---|---|
| 22. | PTT-20181220-WA0025.opus | 12/20/2018 11:22 | Ms. Mohammed: "that's another thing too, Neema had messaged me, actually last week Monday and she asked me for a little help, if I could send something but you know its one channel I knew that I send last time and I got in contact with them and they told me that a lot of people came to them trying to send things but all the channels that they tried is all cut off so nothing can go right now, you know?  So she said that people actually came and leaved monies with them to send as soon as something open back to try and send it, but as it is right now, nothing cannot go, so if you see her tell her that for me now, but as soon as something opens up, I will try to send a little something inshallah, whatever it is, however small, I will try to send it inshallah." | **801(d)(2)(E) 803(1) 803(3) 807** |
| 23. | PTT-20181220-WA0031.opus | 12/20/2018 11:26 am | Ms. Mohammed: "but she asked me, she said things very hard, things really bad with them and whatever, I said alright no problem, but you know but the only thing I know is it is difficult to send, so I'll try to find out, which I did, and I can't get through, at least not right now, because Allah is in charge, when Allah is ready, you know he will open ways, but what the hell it is going on, what it is Neema doing, what it is Islam doing, what is it really going on, you can't get your father involved to talk them?" | **801(d)(2)(E) 803(1) 803(3) 807** |
| 24. | PTT-20181220-WA0032.opus | 12/20/2018 11:27 am | Jihad: "I have a link, I have a link, I might get through, I have to talk to the man, but he had a link, he had somebody in down by where [UI] is, the man just take from there and give it up here but he gives you less, I think, I don't know how much less but I think he takes, it is, I don't know if it is 20% but he's taking a good bit, I don't know why, its about 20% of how much you send, or 15, I don't know, 20 or 15." | **801(d)(2)(E) 803(1) 803(3) 807** |

| 25. | PTT-20181220-WA0033.opus | 12/20/2018 11:28 am | Jihad: "She's telling you things hard mommy (sighs), she telling you things hard, them have it real good compared to me.  Right now, I don't even have rice in the house, I have nothing in the house.  Today I buy some [UI], Mommy, you don't even know what is going on here.  Real dred, I just, you know, just surviving, if you know, Neema and them have rice and all kinds of thing but they get it from the katibah from before, but yesterday I was going to ask she for some, but they have a whole bag but she you know, I know, I ain't saying that they wrong, she give me some before, but you know, I ain't really going to ask her again, because I don't want to overdo it, you know, but now I have I don't have nothing and I now get married, you know?  But inshallah, Allah will provide, don't beat up." | **801(d)(2)(E)** **803(1)** **803(3)** **807** |
|---|---|---|---|---|
| 26. | PTT-20181220-WA0034.opus | 12/20/2018 11:28 am | Ms. Mohammed: "But what I am saying is right now through the connections that I went through and it is that, that is the only connection I will go through because I trust that person.  That is locked off right now.  They said they tried a good few channels to go through and it is blocked as of now.  It has money sitting, waiting to go and nothing cannot go.  So until these people tell me something can happen, then I will take a chance, otherwise I am not going to put money in people's hands just so." | **801(d)(2)(E)** **803(1)** **803(3)** **807** |
| 27. | PTT-20181220-WA0042.opus | 12/20/2018 11:31 am | Ms. Mohammed: "What I was told though, is to try and organize some money and change it into the U.S. and have it and as soon as something opens up, its just a matter of collecting it to send it.  So, um, inshallah, if that is the case, and how Neema playing, I wouldn't send it to her, I guess I'll probably ask you, send it to you and you will give her something from it as well, you know because it will be for all of you and not she alone and I don't want that she get something and she don't share it, you know?  I can't believe, I can't believe, I can't believe what I am hearing, I really cannot believe this, this is unbelievable, as it is I already worried and stressed over all of you and what all of you are going through and to hear this kind of stupidness, it not easy, it is not easy, please tell Islam and tell Neema, I can't handle this worries, I will die with, with worry, I can't, I can't deal with this." | **801(d)(2)(E)** **803(1)** **803(3)** **807** |

9

| 28. | PTT-20181220-WA0053.opus | 12/20/2018 12:27 | Jihad: "It have a route, it have a route, look Hamza and Abby [SP] get some get some thing right on this route here what they using, they get it, it a real safe route, they um, Abby [SP] now thing it, its not with that link, that link where you um, where you through the people who thing what I did thing the last time with but, its not them, its them family that collect it for me, but he ain't going through them, it's a different person, it it it good because Hamza [SP] and Abby [SP] collect from it and Faizal [SP], Faizal, once it have people collect from it, it's a safe route, but its no problem, if you don't trust it, no scene." | **801(d)(2)(E)** **803(1)** **803(3)** **807** |
|---|---|---|---|---|

**December 21, 2018: Islam and Ms. Mohammed Discuss Islam's Activity and Katibah Membership**

| # | File Name | Date and Time | Transcript | Applicable Exceptions |
|---|---|---|---|---|
| 29. | 1_4965581621286666414.ogg | 12/21/2018   1:05 pm | Ms. Mohammed: "Also, Jihad needed to speak to you because he say he get some complaints about you and he need to talk to you to try and straighten up because I don't know what katibah you belong to and I don't know he was saying something about they wanted to, to, to put you in a next one because of some stuff that he hearing about you. What it is going on Islam? | **801(d)(2)(E)** **803(1)** **803(2)** **803(3)** **807** |
| 30. | 2_5253710198123528805.ogg | 12/21/2018 1:09 | Islam: "No, no mommy, nothing, Jihad, nothing, its not a problem, its just Jihad.  I don't know what he hear but nothing, its not a problem, its just, I just wanted to um, I just decided that I wanted to come out and join somewhere else, but I don't know what Jihad hear all that stuff on me, [UI] tell me the same too but I went and tell she but I went and tell she no its not [UI], I tell them I want to go a join somewhere else. | **801(d)(2)(E)** **803(1)** **803(2)** **803(3)** **807** |
| 31. | 2_5253710198123528806.ogg | 12/21/2018   1:11 pm | Islam: "No, its not not no problem, its just I wanted to just go and join somewhere else, work somewhere else, like other people, like people I know they work there so that's why.  I didn't really know plenty people here and I its being a next [UI] with people I don't really know so I just, I just wanted to go join with people I know, you know?" | **801(d)(2)(E)** **803(1)** **803(2)** **803(3)** **807** |

**December 26, 2018: Neema and Ms. Mohammed Discuss Sending Money in Support of ISIS**

| # | File Name | Date and Time | Transcript | Applicable Exceptions |
|---|---|---|---|---|
| 32. | PTT-20181226-WA0008.opus | 12/26/2018 13:05 | Ms. Mohammed: "Yeah Neema, um, s-alaykum, um about that right, I don't know and I don't have that idea how to start to do that, right?  I dealt with a sister's husband, through the sister, last time.  And its only them I would deal with when it comes to that.  So I called her and I asked her and she told me that right now, there is no avenues open to send anything.  In fact, she said that they have money sitting there for people, waiting to send as soon as something opened to send it.  She said that um, right now I could try to start saving up and collecting U.S. so when anything open, I could just give it to her and she would just be able to send it through her husband, but as of right now, there is no avenues opened on this side to send. | **801(d)(2)(E)** **803(1)** **803(3)** **807** |
| 33. | PTT-20181226-WA0009.opus | 12/26/2018 13:10 | Ms. Mohammed: "Neema, you're not understanding what I'm saying, I, I can't, I don't know how to start to do this, I have never done it before, I am dealing with somebody that I know and I trust and I told Jihad already, it's the only people that I am going to deal with, they are the ones who send the people and I trust them, I am not going to deal with anybody else other than them.  And I contacted the sister since the last time I spoke to you and she told me that there is no way that it can go across, they have tried and they have tried, and it there is no way open for them to send, she told she has money sitting there waiting for people to send as soon as somewhere open to send it.  There is nothing open.  You know they have tried and everything is cut off so she is waiting, but she advised me to do, is to save up, change, get the U.S. and have it in hand, as soon as something opens up, she will contact me to come and pick it up.  I, I told Jihad and I'm telling you, they are the only people that I'm going to deal with, right?  Because I don't have a cent, I work very hard for what I have, but I will take what I have and I'll change it, and whatever I get, I will send it for you but they are the only people that I am going to go through, I myself, cannot do it." | **801(d)(2)(E)** **803(1)** **803(3)** **807** |

## II.   LEGAL ARGUMENT

### a.   Authentication

Rule 901(a) requires the Government to "produce evidence sufficient to support a finding" that the WhatsApp Communications are authentic conversations between Jihad Ali, Islam Ali, and their mother, Lazina Mohammed.   The Eleventh Circuit has elaborated that the Government satisfies Rule 901(a) when it makes a prima facie showing that the evidence—here, the WhatsApp Communications—are what they purport to be—here, an accurate documentation of the communications between Jihad, Islam, and their mother.   *PDVSA US Litig. Tr. v. Lukoil Pan Americas, LLC*, 991 F.3d 1187, 1190–91 (11th Cir. 2021) (quoting *United States v. Maritime Life Caribbean Ltd.*, 913 F.3d 1027, 1033 (11th Cir. 2019)); *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010).   Once that prima facie case is made, then the evidence is admitted, and the jury ultimately decides whether the evidence is authentic.   *PDVSA*, 991 F.3d at 1190-91; *Maritime Life*, 913 F.3d at 1033 ("Only at the second step would "the trier of fact … appraise whether the proffered evidence is in fact what it purports to be.").   The burden of making that prima facie case is "not an onerous one."   *United States v. Lanzon*, 639 F.3d 1293, 1301 (11th Cir. 2011); *see also United States v. Muller*, 819 F. App'x 701, 709 (11th Cir. 2020).   Indeed, it requires a showing of less than a preponderance of the evidence, which has been described as only "some competent evidence in the record to support authentication."   *United States v. Koziy*, 728 F.2d 1314, 1321 (11th Cir. 1984); *United States v. Elkins*, 885 F.2d 775, 785 (11th Cir.1989) (stating that circumstantial evidence alone may be sufficient authentication). Further, this Court has "broad discretion" in admitting such recordings and the Eleventh Circuit is "extremely reluctant" to disturb the trial court's ruling.   *United States v. Cole*, 755 F.2d 748, 766 (11th Cir.1985); *United States v. Caldwell*, 776 F.2d 989, 1001 (11th Cir. 1985) (court will not overturn a district court's

12

determination that a piece of evidence was properly authenticated unless "there is no competent evidence in the record to support it."); *see also United States v. Biggins*, 551 F.2d 66, 67 (5th Cir. 1977

In determining the authenticity of government-created audio recordings, a series of factors—often called the "*Biggins* factors"—guides the authenticity analysis. *See Biggins*, 551 F.2d at 66. Although the *Biggins* factors are inapplicable here because the government had no involvement in creating the WhatsApp Communications (as discussed further below) the factors remain relevant as they are often referred to when discussing the admissibility of audio recorded statements. "To establish authenticity [of an audio recording], the Government must demonstrate: (1) the operator's competency; (2) the fidelity of the recording equipment; (3) the absence of material alterations; and (4) the identification of relevant sounds or voices." *Id.* The court in *Biggins*, however, applied those factors to a recording that the government created, which was critical to the Court's analysis, stating that this "burden properly falls to the government because it has access to such information in a way the criminal defendant does not." *Id.* at 66. Therefore, courts have routinely applied the *Biggins* factors to determine the authenticity of government-created wiretaps, undercover recordings, and jailhouse phone calls. *See, e.g., United States v. Reeves*, 742 F.3d 487, 502 (11th Cir. 2014) (wiretap recordings); *United States v. Singleton*, 455 F. App'x 914, 917 (11th Cir. 2012) (authenticating jailhouse phone calls despite government not fulfilling all *Biggins* factors); *United States v. Stephens*, 202 F. Supp. 2d 1361, 1366-70 (N.D. Ga. 2002) (authenticating undercover recordings pursuant to *Biggins*).

As mentioned, the *Biggins* factors do not apply here, because the Government did not create the WhatsApp Communications. *United States v. Broomfield*, 591 F. App'x. 847, 852 (11th Cir. 2014) (finding that the *Biggins* factors did not apply to a YouTube video that the Government

did not create).  As *Broomfield* accurately stated, "if the *Biggins* factors were to apply under these circumstances . . . the prosecution could seldom, if ever, authenticate a video that it did not create." *Id.*  Even so, *Biggins* itself contemplates not meeting all the factors, as the key purpose of the requirements is to "ensur[e] the accuracy of the recording." *Id.* at 67.  Indeed, "[i]f the trial judge independently determines that the recording accurately reproduces the auditory evidence, however, his discretion to admit the evidence is not to be sacrificed to a formalistic adherence to the standard we establish." *Id.*  In other words, the Government need not meet all these factors, if " . . . upon independent examination, the district court is convinced that the 'recording accurately reproduces the auditory experience.'" *United States v. Buchanan*, 70 F.3d 818, 827 (5th Cir. 1995).

There is ample evidence making a *prima facie* showing that the WhatsApp Communications are accurate conversations between Jihad, Islam, and Ms. Mohammed.  First, Rule 901(b)(4) provides that authentication can be established by the evidence's distinctive characteristics such as "appearance, contents, substance, or internal patterns . . . taken in conjunction with circumstances."  The "circumstances" referred to in subsection (b)(4) include circumstances surrounding discovery of the evidence.  *See United States v. Smith*¸ 918 F.2d 1501, 1510 (11th Cir. 1990) (holding that the government may authenticate evidence by the circumstances surrounding its discovery); *See United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) (finding that text messages properly authenticated when the cellular phone was recovered from the individual's bedroom).

Here, the WhatsApp Communications were all recovered from Ms. Mohammed's cellular phone, after Ms. Mohammed provided her phone and the consent to search its contents in a face-to-face meeting with the FBI.  Accordingly, there is no reason to believe that any of the WhatsApp Communications were altered (at least by the Government) in any way.  Further, the conversations

14

themselves contain distinctive "contents" and "substance," including the participants often self-identifying and the participants discussing matters about which only they would know or discuss.[2]

Second, Rule 901(b)(5) states that recordings can be authenticated by "an opinion identifying a person's voice . . . based on hearing the voice at any time under circumstances that connect it with the alleged speaker." This lay opinion testimony can derive from various witnesses, including co-conspirators, expert witnesses, and law enforcement witnesses who recognize the speaker's voice. *See, e.g., United States v. Reeves*, 742 F.3d 487, 502 (11th Cir. 2014) (authenticating phone call based on co-conspirator who identified Defendant's voice); *United States v. Ross*, 686 F. App'x 691, 692-93 (11th Cir. 2017) (authenticating recordings based on testimony of two law enforcement officers identifying voice); *United States v. Cintora-Gonzalez*, 569 F. App'x 849, 859 (11th Cir. 2014) (authenticating recording based on testimony of expert witness's voice identification); *United States v. Duncan*, 166 F. App'x 464, 466 (11th Cir. 2006) (authenticating recording based on law enforcement witness's voice identification). Then, once that prima facie showing is made about the voice identification, "the jury must decide what weight to give to a witness's voice identification." *Ross* at 692 (citing *Reeves* at 502). Here, the Government intends to call witnesses who can identify the voices of Jihad Ali, Islam Ali, and Lazina Mohammed based on interviews they conducted with.

---

[2] These facts also implicate Rule 901(b)(6)'s method of authentication for phone calls, which provide that such calls (like the WhatsApp voice messages here) are authenticated when there is sufficient evidence "that a call was made to the number assigned at the time to a particular person, if circumstances, including self-identification, show that the person answering was the one called." Based on the retrieval of the WhatsApp Communications directly from Ms. Mohammed's cell phone, there is sufficient evidence to show that Ms. Mohammed was the "person called" or the person to whom the messages were sent, and that her sons were the ones sending them.

### b. The WhatsApp Communications are Not Hearsay as They Are Co-Conspirator Statements Made in Furtherance of a Conspiracy under Rule 801(d)(2)(E)

A statement is not hearsay if it is offered against an opposing party and "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To introduce the WhatsApp Communications as evidence, the government must show by a preponderance of the evidence that: (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the declarant made the statement during the course of and in furtherance of the conspiracy. *United States v. Rivas Nunez*, No. 21-12512, 2022 WL 1763767, *5 (11th Cir. June 1, 2022) (citing *United States v. Christopher*, 923 F.2d 1545, 1549–50 (11th Cir. 1991)); *United States v. Musaibli*, 42 F.4th 603, 614-19 (6th Cir. 2022). The WhatsApp Communications themselves may be considered in determining their admissibility. *Rivas Nunez,* 2022 WL 1763767 at *5 (holding that the district court may rely on the information provided by the co-conspirator statement) (citing *United States v. Byrom*, 910 F.2d 725, 735–36 (11th Cir. 1990)).

### i. Defendant Entered into Criminal Conspiracy to Provide Material Support to ISIS

The Defendant, Jihad Ali, Islam Ali, and Ms. Mohammed all entered into a criminal conspiracy to provide material support to ISIS. "The existence of an agreement between two or more persons" to provide material support to ISIS constitutes a criminal conspiracy. *United States v. Augustin*, 661 F.3d 1105, 1121 (11th Cir. 2011) (per curiam) ("A jury could find that by volunteering his service to Al Qaeda – whether for financial or other reasons – Augustin conspired to provide material support to a foreign terrorist organization in violation of § 2339B"); *United States v. Musaibli*, 42 F.4th 603, 614-19 (6th Cir. 2022); *United States v. Alebbini*, 979 F.3d 537, 544 (6th Cir. 2020) (citations omitted); *see also United States v. Gigante*, 166 F.3d 75, 82 (2d Cir.

16

1999) (noting that as criminal ventures expand, so too must the sweep of Rule 801(d)(2)(E)). "When determining whether a conspiracy existed under Rule 801(d)(2)(E), 'the key is coordinated action.'" *Musaibli*, 42 F.4th at 615 (internal citations omitted).

The United States formally designated ISIS as a foreign terrorist organization in May 2014. In July 2014, when Abu Bakr al-Baghdadi publicly declared the Islamic State a Caliphate, he invited Muslims from around the world to join. *See Timeline: the Rise, Spread, and Fall of the Islamic State*, The Wilson Center, Oct. 28, 2019, https://www.wilsoncenter.org/article/timeline-the-rise-spread-and-fall-the-islamic-state (last visited on July 20, 2022).

After viewing al-Baghdadi's public call, the Defendant answered the call and entered into a conspiracy to materially support ISIS. By sending money to her sons, who were fighting for ISIS, Ms. Mohammed also supported the conspiracy's aims. Ms. Mohammed did so, as text messages and audio recordings reveal, despite knowing the ISIS's criminal aims and the laws passed to prevent her from doing so. The WhatsApp Communications, which are aimed at furthering this conspiracy, are therefore admissible at trial.

### ii. The Defendant and the Declarants Were Members of a conspiracy to materially support ISIS

The Defendant, his two sons Jihad and Islam Ali, and their mother Ms. Mohammed were all members of the conspiracy to provide material support to ISIS. To establishment membership in a conspiracy, the government must establish: (1) that a conspiracy existed; (2) the individual knew the essential aims of the conspiracy; and (3) with such knowledge, the individual joined. *United States v. Dixon*, 901 F.3d 1322, 1343-44 (11th Cir. 2018).

Ample evidence shows that the Defendant furthered the conspiracy's aims by providing material support to ISIS. Jihad Ali pleaded guilty to conspiring to provide material support to ISIS on May 4, 2021, and was thus no doubt a coconspirator. *United States v. Jihad Ali*, 21-20101-cr-

KING at ECF Nos. 31-33.  Indeed, Jihad Ali admitted to traveling with the Defendant from Trinidad to Syria, where he completed ISIS military training, joined an ISIS katibah, and conducted ISIS military operations.  The same holds true for Jihad's brother, Islam Ali, who followed a similar path.  The WhatsApp Communications detail both Jihad and Islam's participation as ISIS fighters and include a picture of the two among military weaponry.  That is sufficient evidence to establish their membership in the charged conspiracy.

While Ms. Mohammed did not travel to Syria, she joined the conspiracy to materially support ISIS all the same.  Like many others, Ms. Mohammed furthered the conspiracy from abroad.  She went to great lengths to illegally funnel money to ISIS, despite her acute knowledge that it was a terrorist organization and that her sons were fighting on the frontlines against the non-believers.  *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 137-8 (2d Cir. 2008) (finding that coconspirators need to have "entered into a joint enterprise with consciousness of its general nature and extent" or with "some knowledge of the conspiracy's unlawful aims and objectives").  Indeed, several of the WhatsApp Communications reveal Ms. Mohammed's efforts to discretely send money to ISIS, shortly after sending messages discussing the anti-terrorist financing laws that prohibited her from doing so.  Some of the WhatsApp Communications include conversations between Ms. Mohammed on her sons about different "links" or connections, which would allow Ms. Mohammed to send money to ISIS undetected.  Those messages establish that Ms. Mohammed joined the ISIS Conspiracy and financially supported it from afar.  That said, even if the Court finds that Ms. Mohammed did not join the conspiracy, the statements of Jihad and Islam are still admissible, because Rule 801(d)(2)(E) encompasses coconspirator statements that are made to non-coconspirators.  *United States v. Thompson*, 976 F.2d 666, 670 (11th Cir. 1992);

18

*United States v. Jones*, 913 F.2d 1552, 1563 (11th Cir. 1990) (holding that a coconspirator's statement to an informant was admissible).

### iii.   The WhatsApp Communications Are Statements in Furtherance of the Conspiracy to Materially Support ISIS

Third, and finally, the government must show that the statements were made in the course of and in furtherance of the conspiracy. *Christopher*, 923 F.2d at 1549–50. This Circuit "applies a liberal standard in determining whether a statement is made in furtherance of a conspiracy." *United States v. Bazemore*, 41 F.3d 1431, 1434 (11th Cir. 2014); *United States v. Flores*, 572 F.3d 1254, 1264 (11th Cir. 2009); *United States v. Thompson*, 976 F.2d 666 (11th Cir. 1992) (holding that the trial determination will be disturbed only if clearly erroneous) (internal quotations and citations omitted). Thus, the "in furtherance of the conspiracy requirement" is met if the statement advances the conspiracy in any way. *Flores*, 572 F.3d at 1263-64 (finding statements about a co-conspirator's reliability and stature fostered cohesiveness within the conspiracy and thus furthered its interests). Such furtherance includes, for example, "providing reassurance to a co-conspirator, seeking to induce a co-conspirator's assistance, serving to foster trust and cohesiveness, or informing co-conspirators as to the progress or status of the conspiracy, or by prompting the listener — who need not be a co-conspirator — to respond in a way that promotes or facilitates the carrying out of a criminal activity." *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993) (internal citations omitted); *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 139 (2d Cir. 2008) (admitting co-conspirator statements, stating that "a statement is made 'in furtherance' of the conspiracy if it provides reassurance or serves to maintain trust and cohesiveness among the conspirators or informs other conspirators of the current status of the conspiracy," further stating "that statements designed to induce a listener's assistance" also further the conspiracy); *United States v. Massa*, 740 F.2d 629 (8th Cir. 1984) (admitting unindicted

coconspirator statements that explained important events to the conspiracy or gave directions to facilitate it).  Statements in furtherance of a conspiracy also includes statements made to recruit potential conspirators, statements seeking to control damage to an ongoing conspiracy, statements made to keep conspirators advised of the progress of the conspiracy, and statements made to conceal the criminal objectives of the conspiracy.  *United States v. Doerr*, 886 F.2d 944, 951 (7th Cir. 1989).  Finally, statements in furtherance of a conspiracy can include WhatsApp text messages and voice messages, so long as the above-described three requirements are satisfied.  *Rivas Nunez*, 2022 WL 1763767 at *5 (admitting WhatsApp text messages as statements in furtherance of a conspiracy).

Here, all three requirements of Rule 801(d)(2)(E) are met.  First, a conspiracy existed. Second, the Defendant, Jihad Ali, Islam Ali, and Ms. Mohammed, all joined that conspiracy. And finally, the WhatsApp Communications were made in furtherance of that conspiracy, because they provide reassurances to a coconspirator, update a coconspirator on the conspiracy's progress, or induce the listener to respond in a way to promote or facilitate the conspiracy to materially support ISIS.  *See generally*, WhatsApp Communications 23-34.  Therefore, the WhatsApp Communications specified above are not hearsay and are admissible as coconspirator statements made in furtherance of the conspiracy.

> **c. Even if the WhatsApp Communications Are Hearsay, They Are Admissible Under Multiple Exceptions to the Hearsay Rule.**
> **i.  Rule 803(1): Present Sense Impressions**

Many of the WhatsApp Communications are present sense impressions, meaning that they are admissible even if they are hearsay under Rule 803(1).  A present sense impression is "a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Fed. R. Evid. 803(1).  "The statement describing or explaining the event

20

or condition must be made while the declarant was perceiving the event or condition or immediately thereafter. The underlying theory of this exception is that the 'substantial contemporaneity of the event and the statement negate the likelihood of deliberate or conscious misrepresentation.'" *United States v. Tercier*, 835 F. App'x 471, 484 (11th Cir. 2020) (quoting *United States v. Scrima*, 819 F.2d 996, 1000 (11th Cir. 1987)).  Further, tape-recorded statements of an individual, like the WhatsApp Communications here, that record impressions of "what they saw" when they saw them, are present sense impressions.  *Id.*; *United States v. Andrews*, 765 F.2d 1491, 1501 (11th Cir. 1985).

Several of the WhatsApp Communications describe what the individual is seeing, either while they are observing it or shortly afterwards.  These contemporaneous observations negate any concern about deliberate misrepresentation and further establish the statements' trustworthiness. Therefore, many of the WhatsApp Communications, if hearsay, are admissible as present sense impressions.

### ii.        Rule 803(2): Excited Utterances

A hearsay statement is admissible under Rule 803(2) if it is one "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  While the declarant must still be under the stress or excitement that the startling event caused, the excited utterance need not be made contemporaneously to that startling event. It is the totality of the circumstances, not simply how long has passed between the event and the statement, that determines whether a hearsay statement was an excited utterance. *See United States v. Belfast*, 611 F.3d 783, 817-18 (11th Cir. 2010) (admitting statements made "four to five hours" after a startling event); *United States v. Cruz*, 156 F.3d 22, 30 (1st Cir.1998) (finding a statement was an excited utterance when it was made four hours after the startling event because it is likely that the

victim continued to suffer trauma because she could not escape the location where the assault occurred); *United States v. Scarpa*, 913 F.2d 993, 1016–17 (2d Cir.1990) (finding a statement was an excited utterance when it was made five or six hours after the event where the record demonstrated that the declarant was still under stress when he made the statement); *Gross v. Greer*, 773 F.2d 116, 119–20 (7th Cir.1985) (finding that the district court properly admitted a statement made twelve hours after the startling event).

Two of the WhatsApp Communications exhibit excited utterances in response to a startling event. First, WhatsApp Communication #15 is Jihad Ali telling his mother about an enemy attack (a startling event), stating, "already did the attack now, they attack we where we was living close to the frontlines now, and everything was going crazy and kuffar attacking . . ." While it is clear from the context that the statement isn't made contemporaneous to the event, it still describes a startling event while Jihad is reeling from its occurrence. WhatsApp Communication #17 describes a startling event while it is taking place. Jihad Ali states, "*right now* we are in a little box, you know? Inshallah, *right now* they coming, *right now* they coming to one zone where we was real we was real functioning now boy, so *right now* we getting ready to jazz up and look to hit again." (emphasis added). In other words, Jihad Ali is contemporaneously describing an on-coming enemy attack (a startling event) and excitedly states that he is ready to "jazz up" to "look to hit again." This is no doubt an excited utterance and is precisely the type of hearsay Rule 803(2) provides an exception for. Thus, it is admissible at trial.

### iii.        Rule 803(3): Then-Existing Mental, Emotional, or Physical Condition

Rule 803(3) provides an exception for hearsay of "the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health) . . ." "The rule thus permitted the witnesses to relate any out-of-

22

court statements [the declarant] had made to them to the effect that he was scared, anxious, sad, or in any other state reflecting his then existing mental or emotional condition." *United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980).  "The Rule 803(3) hearsay exception most commonly serves to permit the introduction of hearsay statements that express the declarant's present feelings related to ill-health, ill-will, anxiety, intentions, and future plans. Thus, any out-of-court statements the declarant made to the effect that 'he was scared, anxious, sad, or in any other state reflecting his then existing mental or emotional condition' fit neatly under the exception."  Wright & Miller, *Federal Practice and Procedure*, 30B Fed. Prac. & Proc. Evid. § 6832 (2022 ed.) (citing *United States v. Alzanki*, 54 F.3d 994, 1008 (1st Cir. 1995); *United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980)).  Rule 803(3) thus inherently acknowledges the trustworthiness of statements made reflecting and then-existing state of mind or health, particularly statements that pre-date the current litigation and are thus unaffected by personal motives.

Several of the WhatsApp Communications reflect Jihad or Islam's then-existing state of mind or their physical condition.  For example, WhatsApp Communications #9 and #10 reveal Jihad Ali telling his mother about a recent battle he participated in, explaining how people were hurt, injured and killed, and ends with Jihad stating, "we normal, we good," which provided evidence of his current physical condition.  In WhatsApp Communication #14, Jihad again reassured his mother about his current physical state, telling her "everything normal" but that he hoped "the end goal" is "Jannah" (the Muslim concept of heaven or paradise), which evidences Jihad's current physical condition and also reveals his state of mind or intent, which was that he hoped to become of Martyr for the ISIS cause so that he could enter paradise.  These communications, as well as other similar ones, are admissible under Rule 803(3).

### iv. Rule 804(b)(3): Statement Against Interest/Expose Criminal Liability

Rule 804 provides a hearsay exception for when the declarant is unavailable as a witness. "To be admissible under Rule 804(b)(3), a statement must satisfy three elements: (1) the declarant [must be] unavailable; (2) the statement so far tends to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) the statement is corroborated by circumstances clearly indicating its trustworthiness." *United States v. Westry*, 524 F.3d 1198, 1214 (11th Cir. 2008) (internal quotations and citations omitted). For many of the WhatsApp Communications, those three elements are met, rendering them admissible.

### 1. Ms. Mohammed, Jihad Ali, and Islam Ali Are Unavailable

First, Ms. Mohammed and Islam Ali are currently in Trinidad & Tobago and are outside the subpoena power of the Court. Thus, the Government has no way of compelling their testimony at trial, making them unavailable under Rule 804(a)(5)(B). Jihad Ali, on the other hand, has steadfastly refused to testify against his father and would likely invoke the Fifth Amendment if called to testify, and is thus equally unavailable. *See United States v. Thomas*, 62 F.3d 1332, 1337 (11th Cir. 1995) ("Because they invoked their Fifth Amendment privilege to remain silent, it is clear that the [declarants] were unavailable.") (citing *United States v. Hendrieth*, 922 F.2d 748, 750 (11th Cir. 1991)).

### 2. Statements Expose the Declarants to Criminal Liability

"For a statement to be 'against penal interest' it must 'so far tend to subject the declarant to criminal liability that a reasonable man in his position would not have made the statement unless he believed it to be true.'" *Westry*, 524 F.3d at 1215. Here, numerous WhatsApp Communications describe in detail the declarants' material support to ISIS, inherently exposing them to significant

criminal liability.  The declarants were no doubt aware of this fact too, as they discuss efforts to disguise their conduct and material support to ISIS.  Therefore, the declarants would not have otherwise made the statements unless they were true and accurate.

### 3. Corroborating Circumstances Show Statements Are Trustworthy

Corroborating circumstances reveal the reliability of the WhatsApp Communications. Most importantly, the declarants never believed the WhatsApp Communications would see "the light of day," and therefore spoke freely as any mother and sons would.  There was simply no reason to lie or exaggerate their thoughts and experiences, as Jihad and Islam exaggerating their current circumstances would only cause Ms. Mohammed more "worry" and "stress" and she cautioned them not to do so.  Equally important, is that the Government played no role in the creation of the WhatsApp Communications and therefore there is no interest of any party to curry favor with the Government or argument that the WhatsApp Communications have been tampered with in any way.  There is, therefore, significant corroborating circumstances of trustworthiness and the Court should thus admit the WhatsApp Communications that contain statements against penal interest.

### v. Rule 807: Residual Hearsay Exception

Finally, all the WhatsApp Communications are admissible under the residual hearsay exception contained in Rule 807.  Rule 807 permits evidence to be admitted if it has sufficient "circumstantial guarantees of trustworthiness," and "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  As discussed above, the evidence of the trustworthiness of the WhatsApp Communications is significant. They were recovered from Ms. Mohammed's cell phone and contain private communications between Ms. Mohammed and her sons.   The statements are also generally

25

corroborated by additional evidence showing that Jihad Ali and Islam Ali became ISIS fighters. *See, e.g.*, *United States v. Brown*, 685 F. App'x 891, 896 (11th Cir. 2017) (finding verbal statements trustworthy at a supervised release hearing because they matched eyewitness testimony); *Fed. Trade Commission v. On Point Glob. LLC*, No. 19-25046-SCOLA, 2021 WL 4891334 (S.D. Fla. Sept. 23. 2021) (admitting documents under the residual hearsay exception because of their consistent descriptions among other factors); *United States v. Hamama*, 2010 WL 2649877, at *19 (E.D. Mich. June 30, 2010) (applying the residual hearsay exception after finding the documents trustworthy based on the testimony of former Iraqi Intelligence Serv. officials and experts); *United States v. Dumeisi*, 424 F.3d 566 (7th Cir. 2005) (affirming the district court's finding of the residual exception to Iraqi Intelligence Service files).   The WhatsApp Communications are therefore admissible under Rule 807.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:   s/ *Jonathan D. Stratton*
JONATHAN D. STRATTON
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0093075
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9151
Email: jonathan.stratton@usdoj.gov

26

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the

Clerk of Court using CM/ECF, and that the foregoing document is being served this day on all

counsel of record via Notices of Electronic Filing generated by CM/ECF.


s/ *Jonathan D. Stratton*
JONATHAN D. STRATTON
Assistant United States Attorney