**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. <u>21-CR-20123-BLOOM/OTAZO-REYES</u>**

**UNITED STATES OF AMERICA**

**vs.**

**EMRAAN ALI,**
        **a/k/a "Abu Jihad TNT,"**

        **Defendant.**

_____/

## <u>MOTION TO ADMIT ISIS VIDEOS VIEWED BY THE DEFENDANT</u>

The United States moves to admit portions of two ISIS videos (collectively, the "ISIS Videos") that Defendant admitted he viewed before he traveled to Syria to join ISIS.  The Court should admit this evidence because it is direct and relevant evidence of the charged offenses and because, alternatively, it is also evidence of Defendant's preparation, plan, knowledge, motive, and intent under Federal Rule of Evidence 404(b).

**I.    THE ISIS VIDEOS**

  **a.  Abu Bakr al-Baghdadi's July 4, 2014, Speech in Mosul, Iraq ("Baghdadi's Speech")[1]**

ISIS's leader Abu Bakr al-Baghdadi "seized the world's attention" and "made a startling public appearance" on July 4, 2014, when he climbed to the pulpit of Mosul's medieval al-Nuri mosque and declared himself ISIS's caliph, or spiritual leader, of the Muslim faithful.  In his speech, al-Baghdadi cited Ramadan as a month "during which the marketplace of jihad is opened . . . to arm the armies to fight the enemies of Allah to do jihad against the polytheists."  Baghdadi

---

[1] A video of Baghdadi's Speech is available at:
https://sitemultimedia.org/video/SITE_IS_Baghdadi_Sermon_Mosul.mp4 (last visited October 18, 2022).

further encouraged his followers to "do jihad in the cause of Allah, incite the believers, and be patient in the face of this hardship," stating, "if you knew about the reward and dignity in this world and the hereafter through jihad, then none of you would delay in doing it."  This speech, only one of two known videos of the ISIS leader, captured the Islamic State's triumphalism after recent significant military victories and evidences its push to position itself as the center of gravity for the Muslim world with the caliph (Baghdadi) as its sole authority.  To further that goal, a 22-minute video of that speech was published by ISIS's al-Furqan Media Foundation the next day.

The United States only seeks to play several small portions of that 22-minute video.  Those portions include the first two and a half minutes, which shows al-Baghdadi ascending to the pulpit and the scene of the assembled crowd, and a few additional clips of al-Baghdadi making his speech. Because Baghdadi's Speech is in Arabic, the United States need not show additional footage, and it will instead rely on a translated transcript and expert testimony to convey the speech's relevance and importance for the jury.  Importantly, Baghdadi's Speech does not contain any images or graphic descriptions of violence.

### b.  *The Flames of War*[2]

In September 2014, ISIS's Al Hayat Media Center released *The Flames of War*, a nearly hour-long propaganda video aimed at English-speaking Western recruits, like Defendant, to join and fight for ISIS. *The Flames of War* appeared shortly after then-President Obama announced a new military campaign against ISIS, and it showed images of President Obama and ISIS combat operations, it focused on ISIS military victories, and it emphasized the importance of foreign

---

[2] *The Flames of War* is available at: https://sitemultimedia.org/video/SITE_IS_Flames_War.mp4 (last visited October 18, 2022).

fighters joining and fighting for ISIS.  As the United States' expert witness will testify at trial, ISIS used *The Flames of War* and other similar high quality, professionally made videos as influential and critical tools to recruit foreigners, particularly English-speaking fighters, to join and materially support ISIS.

The United States only seeks to play the first four minutes of the 55-minute video and an approximately three-minute clip from minute 8:05 until minute 11:00.  The United States selected these two excerpts for three reasons.  First, the initial four minutes of *The Flames of War* serves an introduction of what follows and provides as a summary of the video's message without the video's more gruesome violence.  Second, the three-minute clip discusses the importance of ISIS reconnaissance missions and ISIS's use of their "beloved Kalashnikovs."  These two facts directly relate to Defendant, who was assigned to conduct ISIS reconnaissance missions and whose ISIS battalion mostly used Kalashnikov firearms.  Finally, the United States does not seek to play any additional excerpts because the *Flames of War* is an extremely graphic video that includes close range executions and footage of dead bodies covered in blood.  The United States therefore choose these two excerpts, totaling about seven minutes of the 55-minute video, because they accurately represent the video's purpose and theme without exposing the jury to its most extreme violent content.[3]

---

[3] The United States intends to have an expert witness to briefly describe other portions of the ISIS videos more fully.

II. **Defendant Admitted that He Watched Baghdadi's Speech and *The Flames of War* Before Joining ISIS in Syria.**

United States law enforcement interviewed Defendant three times, on August 7 and 8, 2019, and on September 28, 2019.  During each interview, Defendant described watching ISIS videos on the Internet, including Baghdadi's Speech and *The Flames of War*.

Defendant, in reference to when he watched Baghdadi's Speech, stated that at that time, the border between Syria and Iraq had disappeared which he believed signified that "things were going back to the way it used to be."  Defendant viewed that development as fulfillment of Islamic prophecy and as a call for his action. Thus, Baghdadi's Speech, which celebrated ISIS's establishment as a functioning government, motivated Defendant to leave Trinidad and join ISIS. Indeed, Defendant recalled that once Baghdadi established the caliphate, people began leaving Trinidad "in waves" for Syria.  Defendant also explained that, after ISIS conquered Mosul and Baghdadi made his speech, his mosque's imam, Nazim Mohammed, changed his view about ISIS and began supporting people who wanted to travel to Syria to join ISIS.  Thus, Defendant admitted that Baghdadi's Speech impacted and enabled his decision to leave Trinidad and join ISIS in Syria.

Defendant also discussed watching *The Flames of War* prior to leaving Trinidad during one of his statements to United States law enforcement.  Specifically, Defendant discussed some of *The Flames of War* talking points about Western media, stating, "there was a lot of propaganda from the West, about what they, what they portray about the Islamic State" and that he believed that ISIS was "on the right path at that time."  Defendant said it was widely believed then that "the West they don't like Muslims, and they, they will always fight against you," which he accurately confirmed is portrayed in *The Flames of War*.

4

Accordingly, ISIS propaganda, and specifically Baghdadi's Speech and *The Flames of War*, affected Defendant's decision to join ISIS and for this reason, the United States seeks to admit portions of both videos at trial.

**ARGUMENT**

### I.   Legal Standards

#### a.  Relevant Evidence is Admissible at Trial

Rules 401 and 402 establish that relevant evidence is admissible at trial except as otherwise provided by the United States Constitution, by Act of Congress, or by the Federal Rules of Evidence. *See* Fed. R. Evid. 401, 402; *United States v. Abel*, 469 U.S. 45, 51 (1984).  Rule 403 allows the trial judge to exclude relevant evidence if, among other things, "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.

"Relevant evidence 'has a tendency to make a fact more or less probable than it would be without the evidence.'"  *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) (quoting Fed. R. Evid. 401).  "The evidence must be probative of the proposition it is offered to prove," and the proposition "must be one that is of consequence to the determination of the action."  *Id.* (internal citations and quotations omitted).  Further, "intrinsic evidence is admissible if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *Id.*  Specifically, "evidence, not part of the crime charged but pertaining to the change of events explaining the context, motive, and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for

5

the jury." *Id.*; *United States v. Reifler,* 446 F.3d 65, 91-92 (2d Cir. 2006) (explaining evidence is admissible "to provide background for the events alleged in the indictment" or "to enable the jury to understand the complete story of the crimes charged").  As the Supreme Court has recognized, in analyzing the admissibility of evidence, the trial court should make its determinations "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." *Old Chief v. United States*, 519 U.S. 172, 183 (1997).

### b.  Admissibility Under Rule 404(b)

Evidence of a defendant's other acts is admissible under Rule 404(b) if relevant to an issue at trial other than the defendant's character—such as proving preparation, plan, knowledge, motive, or intent.  Fed. R. Evid. 404(b)(2).  Rule 404(b) permits the introduction of evidence of a prior act if the government can show: (1) a proper purpose for introducing the evidence; (2) that the prior act occurred and that the defendant was the actor[4]; and (3) that the probative value of introducing the evidence outweighs any prejudicial effect the evidence might have.  *Troya*, 733 F.3d at 1131-32.  The Supreme Court has observed that evidence of extrinsic acts "may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston v. United States*, 485 U.S. 681, 685 (1988).

---

[4] Whether this element has been established is decided by the court and requires only a showing that a jury could find that the defendant committed the prior act. *Huddleston v. United States*, 485 U.S. 681, 687-88 (1988).

## II. The ISIS Videos Are Relevant and Admissible as Direct Evidence

The ISIS Videos are admissible direct evidence that Defendant was motivated by ISIS's jihadist ideology, shared ISIS's aims, and understood the group's violent and terroristic activity. Such motive, intent, and "state of mind" evidence is routinely admitted in terrorism and material support trials. *See United States v. Jayyousi*, 657 F.3d 1085, 1108 (11th Cir. 2011) (holding televised interview with Osama bin Laden was properly admitted as "state of mind evidence"); *United States v. Abu–Jihaad*, 630 F.3d 102, 133–34 (2010) (affirming conclusion that "pro-jihadist contents of the videos were relevant to understanding [the defendant's] motive and intent")[5]; *United States v. Mehanna*, 735 F.3d 32, 59-64 (1st Cir. 2013) (holding pictures, videos, and literature that defendant "absorbed and endorsed" admissible to establish that defendant, "inspired by terrorist rants, developed an anti-American animus" that motivated his decision to travel to Yemen to join al-Qaeda); *United States v. El–Mezain*, 664 F.3d 467, 509-10 (5th Cir. 2011) (holding material seized from defendant, "including images of violence and videos glorifying Hamas and depicting Hamas leaders, was probative of the motive or intent of the [defendant] to support Hamas"). Here, the ISIS Videos "speak directly" to Defendant's state of mind because he consumed it just before leaving Trinidad to join ISIS. *United States v. Pugh*, 162 F. Supp. 3d 97, 116-17 (E.D.N.Y. 2016).

The Eleventh Circuit's holding in *Jayyousi*, which evaluated a video's ability to demonstrate the state of mind of the defendants with respect to the 9/11 World Trade Center

---

[5] In *Abu-Jihaad*, the Second Circuit affirmed the district court's ruling that, because the videos glorified martyrdom and the killing of non-believers, they provided circumstantial evidence of the defendant's intent. *United States v. Abu-Jihaad*, 553 F. Supp. 2d 121, 128 (D. Conn. 2008).

terrorist attacks, is instructive.  In *Jayyousi*, the court reviewed the district court's admission of a 7-minute snippet of a 24-minute televised interview of Osama bin Laden.  *Jayyousi*, 657 F.3d at 1108.  The district court admitted the video, over the defendants' Rule 401 (relevancy) and 403 (unduly prejudicial) objections, as relevant to the defendants' states of mind. *Id*.  The Eleventh Circuit held that the "district court conducted the proper balancing test and mitigated the prejudice to the defendants by instructing the jury to consider the video not for its truth, but rather as state of mind evidence . . ." *Jayyousi*, 657 F.3d at 1108.  In

The importance of *The Flames of War* and Baghdadi's Speech are more compelling than the videos that were deemed admissible in *Jayyousi*.  First, Defendant admits to watching both videos prior to embarking on multi-country trip with his family to join ISIS in Syria.  The videos affected actual and arduous conduct undertaken immediately by Defendant.  Second, the excerpts that the United States seeks to play comprise a very small portion of the videos—approximately 10-15% of each—which is, significantly less than the portions played in *Jayyousi*.  *Jayyousi*, 657 F.3d at 1108 (affirming the admission of 7 minutes, or approximately 30%, of a 24 minute video). Third, the excerpt from *The Flames of War* was chosen to avoid the video's most graphic and violent portions, while still showing the video's message.  *See Jayyousi*, 657 F.3d at 1108 ("Rule 403 is an extraordinary remedy which should be used only sparingly.").

The ISIS Videos are also inextricably intertwined with the Government's other evidence. *United States v. Gonzalez*, 110 F.3d 936, 942 (2nd Cir. 1997) (explaining evidence is not "other act" evidence if it is "inextricably intertwined with the evidence regarding the charged offenses."). To provide the jurors with the full context and import of Defendant's material support for ISIS, the United States should be allowed to introduce the ISIS Videos that Defendant consumed just

before joining the organization. Defendant's immersion in ISIS propaganda glorifying martyrdom in the name of jihad, celebrating ISIS's military campaigns, and emphasizing the importance of foreign fighters, is all critical to understanding Defendant's efforts to support ISIS and his motive and intent to conspire with others to provide material support to ISIS..

Finally, the ISIS Videos are highly probative of Defendant's knowledge that ISIS was a designated terrorist organization and that ISIS engaged in terrorist activity and terrorism. *See* 18 U.S.C. § 2339B(a)(1); Eleventh Circuit Pattern Jury Instructions, Instruction O91.2 (requiring the United States to prove that Defendant knew that ISIS was either: (1) a designated terrorist organization, (2) engaged in terrorist activity, or (3) engaged in terrorism); *See also United States v. Kassar*, 600 F.3d 108, 129 (2d Cir. 2011) (noting § 2339B requires proof that defendant knows that "the organization he is aiding is a terrorist organization or engages in acts of terrorism"). Defendant's admitted consumption of the ISIS Videos is direct proof of such knowledge. *See, e.g.*, *Pugh*, 162 F. Supp. 3d at 114 (reasoning that defendant's possession of "ISIS or Jihadist propaganda on his computer or social media is potentially relevant to the charged offenses," and that "[t]he Second Circuit has regularly allowed terrorist propaganda to be admitted, particularly in the context of material support offenses, in order to prove the *mens rea* element of the offense") (citing *United States v. Kaziu*, 559 F. App'x 32, 35 (2d Cir. 2014)); *United States v. Abu–Jihaad*, 630 F.3d 102, 133–34 (2010); *United States v. Ullah*, No. 18 Cr. 16, ECF No. 48 at 4 (S.D.N.Y. Oct. 30, 2018) (holding terrorist propaganda materials probative of defendant's "knowledge that ISIS was a foreign terrorist organization or was engaged in terrorist activity, which is another element with respect to Count One, the material support count"); *United States v. Alimehmeti*, No. 16-CR-398, ECF No. 96 at 15-16 (S.D.N.Y. Jan. 5, 2018) (admitting ISIS propaganda materials

because they "bear on whether [the defendant] had the required state of mind" and show defendant's "knowledge that ISIS was a designated FTO or involved in terrorism").

### III.   The ISIS Videos Are Admissible "Other Acts" Evidence

In the alternative, the ISIS Videos are admissible "other act" evidence under Rule 404(b), because they prove Defendant's preparation, plan, knowledge, motive, and intent for the charged crimes. Fed. R. Evid. 404(b). The ISIS Videos are highly probative of Defendant's motive and intent to commit the charged offenses, and they show that he acted knowingly, not by accident or mistake, as the United States believes Defendant will claim at trial. *See Kassar*, 600 F.3d at 129.

As detailed above, the evidence is highly probative of Defendant's knowledge of ISIS's existence, goals, and terrorist activities. That Defendant consumed materials promoting ISIS's ideology and glorifying its methods and means, including the centrality of recruiting foreign fighters, is probative of his plan, motive, and intent to provide material support to ISIS when he traveled to ISIS territory and began fighting on ISIS's behalf. *See, e.g.*, *United States v. Kassir*, No. 04-CR-356, 2009 WL 976821, at *6 (S.D.N.Y. Apr. 9, 2009) (holding evidence seized from Kassir's residence showing that he associated with terrorist groups other than al-Qaeda was admissible to prove his motive, intent, preparation, knowledge, and absence of mistake or accident in supporting al-Qaeda).

In Baghdadi's Speech, for example, al-Baghdadi incited participation in jihad, telling listeners, "if you knew about the reward and dignity in this world and the hereafter through jihad, then none of you would delay in doing it." *The Flames of War* follows a similar trajectory, arguing to its viewers that despite the United States' claims that the war in Iraq was over, the "flames of

10

war had just begun." Therefore, the ISIS Videos motivated Defendant's decision to join ISIS and are thus admissible evidence about his motive and intent under Rule 404(b).

### IV.   The ISIS Videos Do Not Violate Rule 403

Admitting the ISIS Videos does not violate Rule 403 because the probative value of the limited excerpts from the two videos that the United States seeks to admit is not outweighed, much less "substantially outweighed," by any risk of unfair prejudice. While Baghdadi's Speech does not present significant Rule 403 issues, *The Flames of War* is graphic and violent, as it includes several on-camera executions and glorifies ISIS's strength and military successes. Although the United States believes the entirety of *The Flames of War* is admissible, the United States proposes to only introduce 7-minutes of the 55-minute video to establish Defendant's knowledge and it will describe other portions briefly through far-less-graphic witness testimony.

Such use of excerpts follows the court's approach in *Pugh* where the court permitted the admission of excerpted footage depicting ISIS "fighters rounding up half-clothed prisoners and, ultimately, forcing them to lie down in a sprawling human pile" and leaving out "scenes depicting the mass execution of prisoners" and equally consistent with the court's approach in *Abu-Jihaad*, which stated that "although these excerpts included depictions of violence, as was necessary not to distort the sense of the films as a whole, the depictions were limited and, as the district court accurate observed, less gruesome than many seen on the nightly news dispatches from Baghdad." *Pugh*, 162 F. Supp. 3d at 118; *see also Abu-Jihaad*, 630 F.3d at 133; *United States v. Abu-Jihaad*, 553 F. Supp. 2d 121, 128 (D. Conn. 2008) ("[I]t is difficult -- if not impossible -- for the Government to give the jury an accurate sense of the nature of these video without playing for the

11

jury some of the violent and graphic portions of the videos. Otherwise, the jury would have an inaccurate sense of their content.").

In *United States v. Kandic*, the most recent district court to consider the admissibility of ISIS propaganda evidence, the court rejected most of the defendant's Rule 403 objections, stating, "[t]his is a terrorism case; it is inescapable . . . that there will be some evidence about violence and terrorist activity." No. 17-CR-449, 2022 WL 1266431, *6 (E.D.N.Y. April 28, 2022).[6] The court then relied on the defendant's "alleged role in ISIS's media department, his recruitment efforts, and the charged conspiracy to provide a wide range of material support and resources . . ." to determine that the "propaganda evidence is especially relevant to the allegations at issue." *Id.* Here, Defendant's role as an active ISIS fighter is more compelling and makes the ISIS Videos (and their graphic nature) more consistent with Defendant's alleged crimes, including the "wide range of material support and resources" Defendant provided to ISIS.

Indeed, Defendant is charged with providing material support to one of the most lethal terrorist organizations in the world. Defendant not only participated on the frontlines as an ISIS fighter himself, but his children participated as well. Thus, while *The Flames of War* depicts graphic violence conducted by ISIS, it is not more inflammatory than the charged conduct. And as detailed above, this evidence is highly probative of Defendant's knowledge and intent.

Moreover, even where the charged conduct was less violent or destructive than the actions featured in terrorist propaganda, courts have rejected the argument that the propaganda is unfairly

---

[6] The one exhibit that *Kandic* required the Government to edit was a video depicting a severed head, which the court found was "more unfairly prejudicial than probative." The ISIS Videos offered here do not show severed heads.

prejudicial under Rule 403. *See, e.g.*, *Abu-Jihaad*, 630 F.3d at 132-34 (affirming district court's admission of excerpts from jihadist propaganda videos including "an execution and a suicide truck bombing" in a case involving transmission of national defense information to terrorist group); *Mehanna*, 735 F.3d at 59-64 (rejecting 403 challenge to admission of terrorist propaganda in trial involving terrorism charges based on defendant's travel to a terrorist training camp and translation of jihadist propaganda); *El-Mezain*, 664 F.3d at 508-11 (admitting terrorist propaganda evidence in material-support case over defendant's Rule 403 challenge in case involving terrorism financing); *Alimehmeti*, No. 16- CR-398, ECF No. 96 at 15-17 (rejecting defendant's Rule 403 challenge in case involving defendant who tried to facilitate travel of another to join ISIS, finding that ISIS propaganda was admissible "to establish [the defendant's] knowledge of ISIS's designation and its involvement in terrorism," and noting approvingly that the Government did not intend to offer depictions of "graphic violence").

Finally, if the Court is concerned about a risk of undue prejudice, it can "issue an appropriate limiting instruction at the appropriate time and at the request of the Defendant. *Jayyousi*, 657 F.3d at 1108 (holding district court "mitigated the prejudice to the defendants" by properly "instructing the jury"); *Pugh*, 162 F. Supp. 3d at 118 (*citing Abu–Jihaad*, 630 F.3d at 134 (proper limiting instruction minimizes the risk of undue prejudice)).

## CONCLUSION

For these reasons, the Government requests that the Court find the proposed ISIS Videos admissible at trial.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:   s/ *Jonathan D. Stratton*
JONATHAN D. STRATTON
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0093075
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9151
Email: jonathan.stratton@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the

Clerk of Court using CM/ECF, and that the foregoing document is being served this day on all

counsel of record via Notices of Electronic Filing generated by CM/ECF.

s/ *Jonathan D. Stratton*
JONATHAN D. STRATTON
Assistant United States Attorney